IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| LL WHITFIELD FAMILY TRUST,<br><br>Plaintiff,<br><br>v.<br><br>MARVEL ENTERTAINMENT, LLC, and THE WALT DISNEY COMPANY,<br><br>Defendants. | **COMPLAINT** |

## I. INTRODUCTION

NOW COMES the Plaintiff LL Whitfield Family Trust (referred to herein as the "Plaintiff"), by and through undersigned counsel, for its Complaint against Defendant Marvel Entertainment, LLC and The Walt Disney Company (referred to herein as the "Defendants"), alleging and complaining of the following:

## II. NATURE OF THIS ACTION

This is an action in law and in equity for violations of 15 U.S.C. § 1114, 15 U.S.C. § 1125 of the Trademark Act of 1946, N.C. Gen. Stat. § 80-11 and N.C. Gen. Stat. § 75-1.1 resulting in Plaintiff being damaged and uncompensated for property rights.

## III. PARTIES

1. Plaintiff operates as a family-owned business focused primarily on the production of clothing apparel designed to promote creativity, expression, and entrepreneurship in the women and minority communities.

2. Defendant The Walt Disney Company is a multinational mass media and entertainment corporation duly formed and existing under the laws of the State of Delaware, and having a registered office of 251 Little Falls Drive, Wilmington, Delaware 19808, and a principal office of 500 South Buena Vista Street, Burbank, California 91521.

3. Defendant Marvel Entertainment, LLC ("Marvel") is a wholly-owned subsidiary of Defendant The Walt Disney Company ("Disney"), a business corporation duly formed and existing under the laws of the State of Delaware, and having a registered office of 251 Little Falls Drive, Wilmington, Delaware 19808, and a principal office of 500 South Buena Vista Street, Burbank, California 91521.

## IV. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over the action pursuant to 28 U.S.C. § 1338 and 15 U.S.C. §1121 in as much as this claim arises under the Trademark Act of 1946 (The Lanham Act). Furthermore, this Court has subject-matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 (1948) because the action involves a federal question involving the Constitution, laws, or treaties of the United States.

5. This Court has personal jurisdiction over Defendants pursuant to N.C. Gen. Stat. § 1-75.4(1)(d) because Defendants have engaged in substantial activity within this state.

6. Venue is proper in the Court pursuant to N.C. Gen. Stat. §1-80 because Plaintiff is a resident of Cumberland County and Defendants are a foreign corporation.

## V. FACTUAL ALLEGATIONS

7. Plaintiff, LL Whitfield Trust holds shares in and operates as a small family business selling creative art and apparel, founded in and currently headquartered in Fayetteville,
2

North Carolina under the name I Have Issues® Inc. as a registered corporation with the NC Secretary of State ("Plaintiff's Company").

8. Plaintiff's Company currently sells and has sold clothing apparel such as: T-Shirts, hats, sweatshirts, jackets, flip-flops, and wristbands throughout North Carolina and several other states.

9. Among other things, Plaintiff's Company prides itself on being a women and minority owned business that encourages entrepreneurship, creativity, and expression in both the women and minority communities.

10. Plaintiff's Company has used the mark IHAVEISSUES as the Plaintiff's Company's brand and as a trademark in connection with its apparel retail since at least December 27, 2001.

11. Plaintiff owns a federal standard-character word trademark for IHAVEISSUES, Registration No. 2,718,746 with a registration date of May 27, 2003 and (herein the "Registered Word Mark"), for use in connection with "Men's, women's, children's, and infant apparel, namely, sleep wear, undergarments, baby bibs not of paper, caps, visors, neckties, scarves, bandannas, T-shirts, socks, swimwear, rainwear, wristbands, headbands, shorts, sweat shirts, sweat pants, pajamas, play suits, aprons, footwear namely slippers." *See Exhibit A: USPTO Registration.*

12. The Registered Word Mark was originally secured upon application with the United States Patent and Trademark Office ("USPTO") by Ms. Linda Whitfield and subsequently assigned to the Plaintiff on May 11, 2012. *See Exhibit Aa: Recorded Assignment.*

13. Plaintiff's Company has marketed and used the Registered Word Mark in connection with its apparel retail business throughout several states, including North Carolina, as well as parts of Canada.

14. Plaintiff's Company has sold and marketed apparel featuring the Registered Word Mark at women and minority oriented events, festivals, and conventions throughout the eastern region of the United States and in Canada.

15. Plaintiff's Company has marketed the Registered Word Mark by enlisting national minority celebrity endorsers who wear apparel, including T-shirts and hats, from Plaintiff's Company at public appearances and events featuring the Registered Word Mark throughout the United States and Canada.

16. Plaintiff's Company has previously invested and is currently investing significant time, effort, and money in advertising, marketing, and promoting the Registered Word Mark and the goods provided in connection with that mark to promote business, as well as the inclusivity of women and minorities in entrepreneurship and business.

17. Plaintiff's Company has earned revenue in multiple states, including North Carolina as a result of its investment of time, effort, and money into its branding with the Registered Word Mark.

18. Defendant Disney, and its wholly-owned subsidiary, Defendant Marvel, are multinational business corporations, headquartered in Burbank, California, focusing primarily on entertainment and mass media communications, such as television, film, radio, publishing, and theme parks.

19. Defendant Disney, upon information and belief, has spent approximately 5.5 billion U.S. dollars on advertising in the year 2021. *See Exhibit B: Disney Advertising Expenses.*

20. Defendants have employed a large-scale marketing and advertising campaign worldwide that utilizes social media platforms, telephone applications ("apps"), and brand collaborations, with upon information and belief, approximately 50 major corporations, among other tools to market their products to mass audiences throughout the world. *See Exhibit C: Marvel Marketing.*

21. Defendant Disney, upon information and belief, has earned approximately 7.35 billion U.S. dollars in revenue from content sales and licensing, and upon information and belief approximately 50 billion U.S. dollars from media and entertainment in the year 2021. *See Exhibit D: Disney Revenue.*

22. Defendant Marvel, upon information and belief, has earned an estimated 10 billion U.S. dollars in licensing revenue from merchandise sales throughout the world since 2010. *See Exhibit E: Marvel licensing revenue.*

23. Upon information and belief, Defendants produced, sold, advertised, promoted, and/or licensed for distribution goods categorized within the same USPTO international classification of goods as the Registered Word Mark, Class 25, for items including clothing, footwear, and headgear.

24. Specifically, Defendants began producing, selling, advertising, promoting, and/or licensing for distribution apparel prominently featuring the mark, "I have Issues," ("Infringing Mark") after May 27, 2003 when the Plaintiff registered the Registered Word Mark with the USPTO.

25. Most notably, Defendants produced, sold, advertised, promoted, and/or licensed for distribution T-Shirts prominently featuring the Infringing Mark ("Shirts").

26. Defendants produced, sold, advertised, promoted, and/or licensed for distribution Shirts featuring several of Defendants' globally known film and television characters such as "Deadpool" and "Comic Book Guy" from "The Simpsons" with the Infringing Mark prominently displayed on each Shirt. *See Exhibit F: Defendants' characters featuring the Infringing Mark.*

27. Defendants licensed for distribution Shirts featuring several of Defendants' well known film and television characters prominently featuring the Infringing Mark on each Shirt to multiple online apparel distributors and several well known large retailers such as: Amazon Inc., Walmart Inc., and Target Brands Inc. *See for example Exhibit G: Defendant Shirts featuring the Infringing Mark in retail and online stores.*

28. Defendants licensed for distribution Shirts featuring the Infringing Mark that were sold online across the world and in retail stores across the entire U.S., including North Carolina. *See for example Exhibit G: Defendant Shirts featuring the Infringing Mark in retail and online stores.*

29. In addition, Defendants produced, advertised, promoted, and sold Shirts featuring the Infringing Mark for sale and distribution on their own online website. https://www.shopdisney.com/marvel-comics-i-have-issues-ringer-t-shirt-for-men-customizable-7200002726ZES.html?isProductSearch=1&plpPosition=2&searchType=regular. *See Exhibit H: Defendant Shirts featuring the Infringing Mark on Defendant's retail website.*

30. Defendants sold, advertised, and promoted Shirts featuring the Infringing Mark at other revenue generating locations, such as retail locations owned and/or operated by Defendants.

31. According to the USPTO database, Defendants do not own any federal trademark registrations or pending federal trademark applications for the mark IHAVEISSUES or any variation thereof, used in connection with the apparel Defendants have produced, sold, advertised, promoted, and/or licensed.

32. Plaintiff discovered that Defendants licensed for distribution Shirts featuring the Infringing Mark on or about October 3, 2016.

33. Upon discovery of Defendants producing, selling, and/or licensing for distribution Shirts featuring the Registered Word Mark, Plaintiff obtained legal counsel in order to halt the sale, licensing, and distribution of Defendants Shirts featuring the Infringing Mark.

34. Plaintiff notified Defendant Marvel via electronic mail ("email") on October 3, 2016 that Defendant had licensed rights for the sale of shirts featuring the Infringing Mark along with well known Defendant film character "Deadpool" to online retailer 80stees.com ("80stees") for sale and distribution on the website of 80stees. *See Exhibit I: Plaintiff email to Defendant Marvel.*

35. Similarly, on March 18, 2021, Plaintiff, through counsel, contacted Defendant Disney via demand letter, in an effort to halt the licensing, sale, advertising, and promotion of apparel featuring the Infringing Mark in addition to use of well known characters of Defendants and the Infringing Mark prominently displayed together. *See Exhibit J: Plaintiff demand letter to Defendant Disney.*

36. Although Defendant attorneys acknowledged receipt of the trademark notice, efforts by Plaintiff to halt the Defendants from advertising, promoting, producing, selling, and/or licensing Shirts prominently featuring the Infringing Mark with well known film and television

7

Case 5:23-cv-00018-M   Document 1   Filed 01/13/23   Page 7 of 16

characters of Defendants were essentially ignored, and Defendants continue to advertise, promote, produce, sell, and/or license Shirts featuring the Infringing Mark through the present.

37. As a result of Defendants advertising, promoting, producing, selling, and/or licensing online and in retail stores globally Shirts featuring the Infringing Mark and Defendants' well known film and television characters together, Defendants have caused confusion to the general consumer as to who is the senior user and Registered owner of the Registered Word Mark.

38. By advertising, promoting, producing, selling, and/or licensing online and in major retail stores globally Shirts featuring the Infringing Mark and Defendants' well known film and television characters together, Defendants have saturated the market with reproductions of the Registered Word Mark, creating confusion to the consumer as to the correct identity of the junior user and senior user of the Registered Word Mark.

## VI. CAUSE OF ACTION

FIRST CAUSE OF ACTION
(Trademark Act of 1946: § 32 15 U.S.C. § 1114)

39. Plaintiff hereby incorporates paragraphs 1 - 38 by reference.

40. Plaintiff is the sole owner of the Registered Word Mark with a registration date of May 27, 2003 for use in connection with the USPTO International Classification 25 ("Class 25") goods including the categories of clothing, footwear, and headgear.

41. As the sole owner, Plaintiff has the exclusive rights to use and license the Registered Word Mark on commercial products for goods that are included within Class 25.

42. After Plaintiff registered the Registered Word Mark, and without the consent of Plaintiff, Defendants began producing, selling, advertising, promoting, and/or licensing for

8

distribution Shirts prominently featuring the Infringing Mark along with globally known film and television characters of Defendants.

43. Defendants produced, sold, advertised, promoted, and/or licensed for distribution said Shirts on-line and in major retail stores throughout the world.

44. On multiple occasions after registering the Registered Word Mark, Plaintiff contacted Defendants via email and demand letter informing Defendants of the Registered Word Mark, and demanding that the Defendants cease and desist producing, selling, advertising, promoting, and/or licensing for distribution Shirts prominently featuring the Infringing Mark along with Defendants well known television and film characters.

45. Upon Information and belief, Defendants continue to produce, sell, advertise, promote, and or license for distribution Shirts featuring the Infringing Mark and Defendants' well known television and film characters.

46. The Shirts produced, sold, advertised, promoted, and/or licensed for distribution by Defendants are classified in the same category of Class 25 goods, as defined by the USPTO, as the Registered Word Mark of Plaintiff.

47. As a result of Defendants (a multinational corporation and its subsidiary) reproducing Shirts featuring the Infringing Mark for sale and licensing in commerce, along with globally known film and television characters of Defendants, Defendants have caused confusion to the general consumer as to the senior user and owner of the Registered Word Mark, specifically the Plaintiff, a small business owner in North Carolina.

48. The Defendants–through their actions of producing, selling, advertising, promoting, and/or licensing Shirts featuring the Infringing Mark and Defendants' globally known television and film characters online and in major retail stores across the country and

worldwide—have saturated the market with infringing reproductions of the Registered Word Mark, creating consumer confusion as to, among other things, who is the senior and who is the junior user of the mark IHAVEISSUES and confusingly similar variations.

49. Defendants' conduct described above violates the Lanham Act, and Defendants have unfairly competed with, directly diverted sales, lessened the goodwill associated with Plaintiff and its goods, and injured Plaintiff causing damage to Plaintiff in an amount in excess of $75,000, to be determined at trial.

50. As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been and will be deprived of sales and transaction in an amount to be proven at trial.

51. Based on Defendants' wrongful conduct, Plaintiff is entitled to monetary damages and other remedies as provided by the Lanham Act.

## SECOND CAUSE OF ACTION
(Trademark Act of 1946: § 43 15 U.S.C. § 1125)

52. Plaintiff hereby incorporates paragraphs 1 - 38 by reference.

53. Plaintiff is the sole owner of the Registered Word Mark with a registration date of May 27, 2003 for use in connection with the USPTO International Classification 25 ("Class 25") goods including the categories of clothing, footwear, and headgear, thereby granting Plaintiff the exclusive rights to use the Registered Word Mark on commercial products in this class of goods.

54. After Plaintiff registered the Registered Word Mark, Defendants began producing, selling, advertising, promoting, and/or licensing for distribution Shirts prominently featuring the Infringing Mark along with globally known film and television characters of Defendants, both on-line and globally in retail stores of licensees, and in retail stores of Defendants.

10
Case 5:23-cv-00018-M   Document 1   Filed 01/13/23   Page 10 of 16

55. Defendant produced, sold, advertised, promoted, and/or licensed Shirts that are considered Class 25 goods, according to USPTO classification, the same class of goods Plaintiff registered the Registered Word Mark under and reserved the exclusive rights to produce commercial goods.

56. As a result of producing, selling, advertising, promoting, and/or licensing Shirts in the same class of goods, according to USPTO classification, in commerce, both nationally and internationally, prominently featuring the Infringing Mark alongside Defendants' well-known film and television characters, Defendants have created an environment of confusion to the general consumer as to, among other things, the association between Plaintiff and Defendants, the origin of the Registered Word Mark, and the potential of approval by the Plaintiff to license the use of the Registered Word Mark to the Defendants.

57. Defendants' conduct described above violates the Lanham Act, and Defendants' actions have caused confusion, mistake, and deceit as to the affiliation, connection, or association of the Defendants with the Plaintiff and as to the origin, sponsorship, or approval of Defendants' goods and commercial activities by the Plaintiff and in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' and Plaintiff's goods, services, and commercial activities, causing the Plaintiff to be damaged by such acts in an amount in excess of $75,000, to be determined at trial.

58. As a direct and proximate result of Defendants' wrongful conduct, as alleged herein, Plaintiff has been and will be deprived of sales and transaction in an amount to be proven at trial.

59. Based on Defendants' wrongful conduct, Plaintiff is entitled to monetary damages and other remedies as provided by the Lanham Act.

## THIRD CAUSE OF ACTION
(N.C. Gen. Stat. § 80-11- Infringement)

60. Plaintiff hereby incorporates paragraphs 1 - 38 by reference.

61. The Plaintiff first used the trademark IHAVEISSUES in North Carolina on October 1, 1999 in the ordinary course of trade on goods as placed on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if such placement was impractical, then on documents associated with the goods, and the goods are currently sold or otherwise distributed in the State.

62. Defendants began producing, selling, advertising, promoting, and/or licensing Shirts featuring the Infringing Mark along with well known television and film characters of Defendants on line and in major retail stores in North Carolina and across the world after Plaintiff first used Mark in North Carolina.

63. Defendants began use of the Infringing Mark online and in major retail stores in North Carolina and across the world without the consent of Plaintiff. *See Exhibits G, H.*

64. After Plaintiff contacted Defendants via legal counsel to cease and desist from producing, selling, advertising, promoting, and/or licensing Shirts featuring Mark, Defendants continued to use Mark online and in major retail stores in North Carolina and across the world.

65. As a result of Defendants, a major multinational corporation and its wholly-owned subsidiary producing, selling, advertising, promoting, and or/licensing Shirts prominently featuring Plaintiff's, a small business in North Carolina, registered mark online and in major retail stores in North Carolina and across the world, Defendants have saturated the market, confusing the consumer as to the identity of the senior user of mark and the source of origin of the goods.

66. Plaintiffs have been harmed in an amount in excess of $75,000 to be determined at trial.

## FOURTH CAUSE OF ACTION
(Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1)

70. Plaintiff hereby incorporates paragraphs 1 - 38 by reference.

71. Defendants acted deceptively through producing, advertising, selling, promoting, and/or licensing Shirts featuring the Registered Word Mark and well known television and film characters of Defendants, without the consent of Plaintiff after Plaintiff registered the Registered Word Mark in both North Carolina and with the USPTO and introduced the Registered Word Mark in commerce.

72. Defendants acted deceptively through producing, advertising, selling, promoting, and/or licensing Shirts featuring the Registered Word Mark and well known television and film characters of Defendants, throughout the world in both online and major retail stores, saturating the market with goods that confused the general consumer as to the correct identity of the senior user and junior user of the Registered Word Mark.

73. Defendants acted deceptively by continuing to produce, advertise, sell, promote, and/or license Shirts throughout the world, online and in major retail stores, despite knowledge Plaintiff was senior user of the Registered Word Mark, and after Plaintiff contacted Defendants, via legal counsel, requesting Defendants to cease and desist the advertising, selling, promoting, and/or licensing of Shirts.

74. The unfair and deceptive acts are in or affect commerce due to the Defendants, a multinational corporation, and a wholly-owned subsidiary, producing, advertising, selling, promoting, and/or licensing Shirts online and in major retail stores in North Carolina and throughout the world.

75. Plaintiffs have been harmed in an amount in excess of $75,000 to be determined at trial.

## VII. JURY TRIAL DEMAND

WHEREFORE, the Plaintiff respectfully requests and prays that this case be allowed to proceed to a jury trial.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that a judgment be entered:

1. Pursuant to the powers granted to this Court by 15 U.S.C. § 1116 and relevant state statutes, permanently enjoining Defendants and all affiliated or related entities, agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants from:

    a. using the mark "IHAVEISSUES", Defendant's Infringing Mark, and any other confusingly similar imitation of Plaintiff's Registered Word Mark in connection with Defendant's goods; and

    b. using any trademark, service mark, name, logo, or source designation of any kind that is (I) a copy, reproduction, colorable imitation, or simulation of or confusingly similar to, or in any way similar to, the trademarks, service marks, or logos, of Plaintiff, or (II) is likely to cause confusion, mistake, deception, or public misunderstanding regarding the business or goods of Plaintiff.

2. Directing Defendant to deliver up for destruction or to destroy all labels, signs, packages, receptacles, advertising, apparel, promotional materials or the like, whether physical or

digital, in the possession, custody, or control of Defendant that are found to adopt or to infringe Plaintiff's Registered Word Mark.

3. Awarding Plaintiff actual, consequential, and compensatory damages, including accounting for all profits received by Defendants' unauthorized use of a confusingly similar imitation of Plaintiff's Registered Word Mark; the costs of this action; pre-judgment and post-judgment interest; reasonable attorneys' fees under 15 U.S.C. §§ 1114(a), 1117(a), 1117(b), any other applicable sections, and relevant state common law; and a trebling of damages and profits as authorized by law in light of Defendants' willful trademark infringement, bad faith, and malicious intent after receiving notice of infringement, in amounts to be proven at trial.

4. In the alternative to actual damages and Defendants' profits for the infringement and counterfeiting of Plaintiff's trademarks pursuant to the Lanham Act, for statutory damages pursuant to 15 U.S.C. § 1117(c), which election Plaintiff will make prior to the rendering of a final judgment, in an amount to be proven at trial.

5. Awarding Plaintiff pre- and post-judgment interest on any past damages.

6. Awarding Plaintiff costs of suit and reasonable attorneys' fees.

7. Awarding Plaintiff any and all other legal and equitable relief as may be available under law and which the Court may deem just and proper.

This the 13th day of January, 2023.

Respectfully Submitted,

LL Whitfield Family Trust

On behalf of the Plaintiff:

15

Case 5:23-cv-00018-M    Document 1    Filed 01/13/23    Page 15 of 16

by

| | |
|---|---|
| ISSAC NELSON<br>Attorney at Law | TARA WARWICK<br>Attorney at Law |
| *(signature)*<br>_____<br>Issac Nelson, Associate Attorney<br>N.C. State Bar No. 39941<br>CarnesWarwick<br>555 Fayetteville Street, Suite 300<br>Raleigh, NC 27601<br>Tel: (919) 335-8227<br>Fax: (339) 613-3009<br>issac@carneswarwick.law<br>Attorney for Plaintiff | /s/ Tara Warwick<br>_____<br>Tara Warwick, Managing Partner<br>N.C. State Bar No. 48779<br>CarnesWarwick<br>555 Fayetteville Street, Suite 300<br>Raleigh, NC 27601<br>Tel: (919) 714-9135<br>Fax: (339) 613-3009<br>tara@carneswarwick.law<br>Attorney for Plaintiff |

JONATHAN CARNES

Attorney at Law

/s/Jonathan Carnes
_____
Jonathan Carnes, Managing Partner
N.C. State Bar No. 49656
CarnesWarwick
100 Summer Street, Suite 1600
Boston, MA 02110
Tel: (919) 441-3218
Fax: (339) 613- 3009
jonathan@carneswarwick.law
Attorney for Plaintiff

16

Case 5:23-cv-00018-M   Document 1   Filed 01/13/23   Page 16 of 16