IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:23-cv-00018-M

| | | |
|---|---|---|
| LL WHITFIELD FAMILY TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MARVEL ENTERTAINMENT, LLC, | ) | |
| MARVEL BRANDS, LLC, | ) | |
| DISNEY SHOPPING, INC., and | ) | |
| THE WALT DISNEY COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the Defendants' Motion to Dismiss for Lack of
Personal Jurisdiction [DE 28]. The matter is fully briefed and the court finds that a hearing is
unnecessary. For the reasons that follow, the court grants in part and denies in part the Defendants'
motion and dismisses Plaintiff's claims against Defendants Marvel Entertainment, LLC, Marvel
Brands, LLC, and The Walt Disney Company without prejudice. Plaintiff's claims against
Defendant Disney Shopping, Inc. will proceed.

I.      **Background**

Plaintiff initiated this action on January 13, 2023, then filed the operative Amended
Complaint as a matter of course pursuant to Rule 15(a) of the Federal Rules of Civil Procedure on
October 3, 2023, alleging that Defendants harmed Plaintiff by committing trademark infringement
and unfair competition in violation of the Lanham Act, trademark infringement in violation of N.C.
Gen. Stat. § 80-11, and unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-
1.1. Am. Compl, DE 23. In response, Defendants seek dismissal of the Amended Complaint for

this court's lack of personal jurisdiction, arguing that two Defendants are indirect corporate parents that have no purposeful contacts with North Carolina, and that no facts demonstrate the other two Defendants directed their conduct toward North Carolina to create the minimum contact necessary to satisfy due process. Plaintiff counters that Defendants, using a "highly interactive online website," have "purposely provided an effective advertising, marketing and consumer friendly experience that easily and efficiently allows, heavily encourages and facilitates the sale, shipment, and delivery of apparel featuring the Infringing Mark to North Carolina" and, thus, Defendants' contacts with North Carolina satisfy due process requirements sufficient for the court to exercise personal jurisdiction.

Plaintiff alleges that it operates a family business under the name I Have Issues® Inc., a registered corporation with the North Carolina Secretary of State, focused primarily on the production and sales of clothing apparel, such as t-shirts, sweatshirts, hats, and jackets ("Plaintiff's Company"). Plaintiff's Company has used the mark IHAVEISSUES as the Plaintiff's brand and as a trademark in connection with its retail apparel since at least December 2001. Plaintiff owns a federal standard-character word trademark for IHAVEISSUES ("Registered Word Mark") dating back to May 27, 2003, for use in connection with its men's, women's, children's, and infant apparel. Plaintiff's Company has advertised, marketed, and sold apparel featuring the Registered Word Mark throughout the United States and Canada for over a decade.

After the Registered Word Mark was registered with the United States Patent and Trademark Office, Defendants began producing, selling, advertising, promoting and/or licensing for distribution apparel prominently featuring Plaintiff's Registered Word Mark, including t-shirts and sweatshirts. At least one or more of the Defendants licensed for distribution apparel featuring several of Defendants' well-known film and television characters, and prominently featuring the

2

Registered Word Mark, to multiple online apparel distributors and several large retailers such as Amazon.com, Walmart Inc., and Target Brands, Inc. Additionally, at least one or more of the Defendants produced, advertised, promoted, and sold apparel featuring the Registered Word Mark on its own website. Despite producing, selling, advertising, promoting and/or licensing for distribution apparel featuring the Registered Word Mark in retail stores and online, Defendants, according to the USPTO database, do not own any federal trademark registrations or pending federal trademark applications for the mark IHAVEISSUES or any variation thereof.

In or about late 2016, Plaintiff discovered that at least one or more of the Defendants licensed for distribution apparel featuring its Registered Word Mark. Plaintiff, through legal counsel, notified Defendant Marvel Entertainment, LLC ("Marvel") via electronic mail ("email") on October 3, 2016, that Marvel had licensed rights for the sale of apparel featuring the Registered Word Mark, along with a well-known Defendant film character, to an online retailer for sale and distribution via its website. On March 18, 2021, Plaintiff, through counsel, contacted Defendant The Walt Disney Company ("Disney") via demand letter directing Disney to stop licensing, sales, advertising, and promotion of apparel featuring the Registered Word Mark and well-known Disney characters prominently displayed together. Defendants' counsel acknowledged receipt of these communications; however, the requests were ignored. Defendants continue to advertise, promote, produce, sell, and/or license apparel featuring Plaintiff's Registered Word Mark.

## II.     Legal Standards

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating, by a preponderance of the evidence, personal jurisdiction at every stage following such a challenge. *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 131 (4th Cir. 2023) (citing

3

*Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)). "When the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson*, 816 F.3d at 268 (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). The court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to a plaintiff in determining whether the plaintiff has made the requisite prima facie showing. *Id.*; *see also UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (courts must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.") (quoting *Combs*, 886 F.2d at 676). However, the court need not "credit conclusory allegations or draw farfetched inferences," and "[b]lanket conclusory allegations as to multiple defendants are insufficient." *Vision Motor Cars, Inc. v. Valor Motor Co.*, 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013) (citations omitted). "Plaintiffs must base their claim for personal jurisdiction 'on specific facts set forth in the record.'" *Id.* (quoting *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992)).

In this case, Plaintiff asserts the court's "federal question" jurisdiction pursuant to 28 U.S.C. § 1331. In federal question cases, where a defendant has been validly served pursuant to a federal statute's nationwide service of process provision, a district court has personal jurisdiction over the defendant so long as jurisdiction comports with the Due Process Clause of the Fifth Amendment. *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443 (4th Cir. 2015) (citing *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626–27 (4th Cir. 1997)). The Lanham Act, under which the Plaintiff bases this court's subject-matter

4

jurisdiction, ***does not*** authorize nationwide service of process. *Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 521 (7th Cir. 2018); *see also Autoscribe Corp. v. Goldman & Steinberg*, 47 F.3d 1164, 1995 WL 56662, at *8 (4th Cir. 1995) (unpublished) ("Perhaps the concern for preserving the rights guaranteed by federal law to the holders of intellectual property constitutes a good policy reason for providing for nationwide service of process in copyright and trademark cases; that, however, is a matter to be addressed by the legislative branch.").

If the applicable federal statute does not provide for nationwide service of process and the defendant resides outside the forum state, personal jurisdiction may be obtained only pursuant to the provisions of Rule 4 of the Federal Rules of Civil Procedure. *See Design Res., Inc. v. Leather Indus. of Am.*, 900 F. Supp. 2d 622, 630 (M.D.N.C. 2012); *AARP v. Am. Family Prepaid Legal Corp.*, 604 F. Supp. 2d 785, 804 (M.D.N.C. 2009). Specifically, Rule 4(k)(1)(A) permits a federal court to "exercise personal jurisdiction over a defendant in the manner provided by ***state*** law." *Wright v. Zacky & Sons Poultry, LLC*, 105 F. Supp. 3d 531, 536 (M.D.N.C. 2015) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002)) (emphasis added).

In North Carolina, it is "well established that 'whether a nonresident defendant is subject to personal jurisdiction in this State's courts involves a two-step analysis.'" *Schaeffer v. SingleCare Holdings, LLC*, 384 N.C. 102, 106–08, 884 S.E.2d 698, 704–05 (2023) (quoting *State ex rel. Stein v. E. I. du Pont de Nemours & Co.*, 382 N.C. 549, 556, 879 S.E.2d 537 (2022)). First, North Carolina's long-arm statute, N.C.G.S. § 1-75.4, must authorize a court to exercise jurisdiction. *Id.* (citing *Beem USA Ltd.-Liab. Ltd. P'ship v. Grax Consulting LLC*, 373 N.C. 297, 302, 838 S.E.2d 158 (2020)). The North Carolina Supreme Court has determined that the statute "make[s] available to the North Carolina courts the full jurisdictional powers permissible under federal due process." *Id.* (quoting *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231

5

S.E.2d 629 (1977)). "Thus, the second step in the inquiry addresses the determinative issue: whether the Fourteenth Amendment's Due Process Clause permits a [ ] court to exercise jurisdiction over a defendant." *Id.* (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)).

Due process requires that the defendant have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Atl. Corp. of Wilmington, Inc. v. TBG Tech Co., LLC*, 565 F. Supp. 3d 748, 759 (E.D.N.C. 2021) (quoting *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984)); *see also Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558–59 (4th Cir. 2014) (asking "whether [plaintiff] has made a [proper] showing that [defendant] had sufficient contacts with North Carolina to satisfy constitutional due process."). Minimum contacts may be established by a showing that the defendant "purposefully directed his activities at residents of the forum" and that the causes of action arise out of or relate to those activities. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *see also Ford Motor Co.*, 592 U.S. at 359. "The contacts must be the defendant's own choice and not random, isolated, or fortuitous. They must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Ford Motor Co.*, 141 S. Ct. at 1025 (citations, quotation marks, and internal brackets omitted).

## III. Analysis

Typically, in North Carolina, the two-step process for determining personal jurisdiction requires that a court evaluate first whether the transaction falls within the language of the long-arm statute, N.C. Gen. Stat. § 1-75.4; if the statutory requirement is met, the court then examines whether the exercise of jurisdiction aligns with or violates due process. *See Leake v. AutoMoney,*

6

*Inc.*, 2022-NCCOA-490, ¶ 23, 284 N.C. App. 389, 397, 877 S.E.2d 22, 31, *review denied*, 884 S.E.2d 738 (N.C. 2023). However, when the same evidence must be considered for both steps, the analyses merge. *See Stein*, 382 N.C. at 556, 879 S.E.2d at 543; *see also Schaeffer*, 384 N.C. at 106, 884 S.E.2d at 704. This court finds that, "in this case, the statutory analysis merges with the due process analysis." *Stein*, 382 N.C. at 556, 879 S.E.2d at 543.

Under the Due Process Clause, minimum contacts may give rise to one of two forms of personal jurisdiction: general or specific. *Universal Leather*, 773 F.3d at 559 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction requires a "more demanding showing of continuous and systematic activities in the forum state," but specific jurisdiction "may be established if the defendant's qualifying contacts with the forum state also constitute the basis for the suit." *Id.* (quoting *Tire Eng'g v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012)). Here, Plaintiff does not argue that general jurisdiction attaches but, rather, contends that this court has specific personal jurisdiction over Defendants. Resp. at 18, DE 37.

A court may exercise specific jurisdiction when "the defendant has purposefully directed [its] activities at residents of the forum, . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations and citations omitted); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). In determining whether specific jurisdiction lies in the forum state, courts should consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Circ. 2016)

7

(quoting *ALS Scan*, 293 F.3d at 712). "The plaintiff must prevail on each prong." *Id.* (citing *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).

The Fourth Circuit instructs that courts must consider how the requisites of specific jurisdiction apply to the *case's particular circumstances* to decide whether they are satisfied. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). In *Carefirst*, the court addressed a claim of trademark infringement "in which, as here, an out-of-state defendant has acted outside of the forum in a manner that injures someone residing in the forum." *Id.* In such circumstance, the court applied the holding in *Calder v. Jones*, 465 U.S. 783 (1984), in which "the Supreme Court held that a court may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed his tortious conduct toward the forum state, knowing that that conduct would cause harm to a forum resident." *Id.* at 397-98. Thus, for this case, the court applies the "effects test" and may find that personal jurisdiction is proper when the Plaintiff alleges, "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *BohoBlu, LLC v. BluBoho.com Inc.*, No. 3:23-cv-00016-RJC-SCR, 2024 WL 1364755, at *4 (W.D.N.C. Mar. 1, 2024), *report and recommendation adopted*, No. 323CV00016RJCSCR, 2024 WL 1363925 (W.D.N.C. Mar. 29, 2024) (quoting *Carefirst*, 334 F.3d at 398 n.7). Notably, "[i]n cases of trademark infringement, the wrong occurs not only at the place where the infringing label is affixed but also where the confusion occurs." *Id.* (quoting *dmarcian, Inc. v. dmarcian Eur. BV*, No. 1:21-CV-00067-MR, 2021 WL 2144915, at *6 (W.D.N.C. May 26, 2021), *aff'd*, 60 F.4th 119 (4th Cir. 2023)).

8

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King*, 471 U.S. at 476 (cleaned up). These factors are: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Engineers Corp.*, 561 F.3d at 279 (citing *Burger King*, 471 U.S. at 477).

Plaintiff alleges that "[t]his court has personal jurisdiction over Defendants pursuant to N.C. Gen. Stat. § 1-75.4(1)(d)[1] because Defendants have engaged in substantial activity within this state." Am. Compl. ¶ 7. Plaintiff devotes much of its argument to activities allegedly taken by Disney Shopping, Inc. in North Carolina and, thus, the court will begin by evaluating this defendant.

A.    <u>Defendant Disney Shopping, Inc.</u>

Plaintiff argues, "4th Circuit courts, as well as other circuit courts throughout the country have ruled that defendants who have operated interactive websites for the purpose of commercial business activity have established minimum contacts within a forum state to comply with traditional notions of fair play and substantial justice, thus meeting the requirements for a court to exercise specific jurisdiction over a defendant. In the present case, defendant Disney Shopping has

_____

[1] Under § 1-75.4(1)(d), personal jurisdiction exists where a party "[i]s engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." Thus, the court must examine the quantity and scope of Defendants' activities, which is necessary for both statutory and due process analyses.

9

engaged in sufficient contacts with the state of North Carolina for this court to exercise personal jurisdiction in this matter." Resp. at 18, DE 37. Plaintiff identifies no contacts Disney Shopping has with North Carolina other than through Disney Shopping's website on which it sells the allegedly infringing products. *See* Resp. at 19 ("Disney Shopping purposefully directed its activities toward the state of North Carolina via an online website, shopdisney.com.").

Defendants do not challenge whether Plaintiff meets the second prong of the analysis for this court's specific jurisdiction over Disney Shopping, and this court finds the Plaintiff's allegations are sufficient to demonstrate that its infringement claims arise out of Disney Shopping's use of its website to sell the allegedly infringing products in North Carolina, and that the Plaintiff felt the brunt of the harm in North Carolina. Thus, the court must next examine whether Disney Shopping's website use is sufficient to demonstrate that Disney Shopping purposefully directed its allegedly tortious activities at residents of North Carolina.

Plaintiff cites to and relies heavily on the Seventh Circuit's opinions in *Curry v. Revolution Labs., LLC*, 949 F.3d 385 (7th Cir. 2020) and *Illinois v. Hemi Group LLC*, 622 F.3d 754 (2010), which purportedly support Plaintiff's argument that websites unlawfully selling products into the forum state are sufficient to create jurisdictionally sufficient contacts. However, these opinions are not binding and the court finds it must adhere to the precepts of applicable Fourth Circuit law.

In the context of online activities and websites, the Fourth Circuit has "recognized the need to adapt traditional notions of personal jurisdictions," and "adopted the 'sliding scale' model articulated in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), to help determine when a defendant's online activities are sufficient to justify the exercise of personal jurisdiction." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352–53 (4th Cir. 2020) (citing *ALS Scan, Inc.*, 293 F.3d at 707). At the "interactive" end of the scale are

10

"defendant[s] [who] enter[ ] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet" over whom "personal jurisdiction is proper," and at the other "passive" end of the scale are "[websites] that do[ ] little more than make information available to those who are interested in it," which do not satisfy "grounds for the exercise of personal jurisdiction." *Zippo*, 952 F. Supp. at 1124.

Courts in the Fourth Circuit have determined that websites offering products and/or services for sale fall into *Zippo*'s "middle ground," which requires additional analysis. *See Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 142 (4th Cir. 2020). "Regardless of where on the sliding scale a defendant's web-based activity may fall, however, '[w]ith respect to specific jurisdiction, the touchstone remains that an out-of-state person have engaged in some activity *purposefully directed* toward the forum state . . . creat[ing] a substantial connection with the forum state.'" *UMG Recordings*, 963 F.3d at 352–53 (quoting *ESAB Grp., Inc.*, 126 F.3d at 625) (emphasis in original).

In *Fidrych*, on which Defendants primarily rely, the Fourth Circuit addressed whether a South Carolina court had personal jurisdiction over Marriott International, Inc. for personal injury claims that arose during the plaintiff's stay at a hotel in Milan, Italy. 952 F.3d at 129-30. The plaintiff, a South Carolina resident, argued that Marriott's website was used to review and select the hotel and to make his reservation. *Id.* at 139. The court determined, "even if we assume that Fidrych's claims arose from or were sufficiently related to the use of Marriott's website, Marriott's operation of a website accessible in South Carolina is insufficient to satisfy the minimum-contacts requirement of the personal-jurisdiction inquiry." *Id.* at 140. In evaluating the purposeful availment prong, the court focused on "whether Marriott's operation of the website amounts to activity purposefully directed at South Carolina residents" (*id.* at 141) and concluded that (1) the website, used to engage in commercial transactions, did not target South Carolina residents any

11

more than it targeted any other state (*id.*); (2) the website was not used to create a continuing, back-and-forth relationship between Marriott and the website user (*id.* at 142); (3) the website's drop-down menu used by customers to select their state of residence when making reservations was insufficient to show purposeful direction at South Carolina; and (4) the plaintiff's connections with South Carolina are not determinative of the personal jurisdiction inquiry (*id.* at 143).

While *Fidrych* is binding on this court and instructive for this case, the court finds that material factual differences affect the analysis. For example, the claims asserted against Marriott sounded in products liability and negligence whereas, in this case, the claims asserted are intentional torts. As set forth above, the legal standards applied for a personal jurisdiction analysis are different depending on the particular circumstances of each case. *See Carefirst*, 334 F.3d at 397-98; *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877–78 (2011) (noting that "cases involving an intentional tort" may be "exceptions" to the general rule that exercising personal jurisdiction is not lawful unless the defendant "purposefully avails itself of the privilege of conducting activities within the forum State").

Further, unlike here, the *Fidrych* court repeatedly notes that the plaintiff's negligence claims had nothing to do with any contacts between the defendant and the forum state. In this case, Disney Shopping is alleged to have intentionally sold infringing products to persons in North Carolina, and the Defendants admit that Disney Shopping has, in fact, sold sixty (60) "disputed" products to North Carolina customers during the period August 2019 to August 2023 for a total of approximately $1,200.00. *See* Declaration of Richard Childs, November 2, 2023 ("Childs decl.") ¶ 14, DE 32. In other words, through its website, Disney Shopping reached into the North Carolina market, competed with others to sell the same or like products to North Carolina residents, apparently collected and remitted sales tax on its products for North Carolina, and shipped its

products, including those disputed in this case, into North Carolina. In this way, Disney Shopping's website falls on the sliding scale closer to the "interactive" end.

This court acknowledges that *Fidrych* determined that Marriott's website, on which Marriott permitted users to make reservations and provide financial and contact information, did not target residents in one state over another, even assuming that the plaintiff's claims arose from or were related to the use of Marriott's website. *See* 952 F.3d at 141-42. However, in commencing its purposeful availment analysis, the Fourth Circuit asserts that "none of the wrongs Marriott is alleged to have committed took place in South Carolina." *Id.* at 140. The same is not true here; Plaintiff alleges that Defendants, by selling "Shirts featuring the Infringing Mark and Defendants' globally known television and film characters online . . .[,] have saturated the market with infringing reproductions of the Registered Word Mark, creating consumer confusion as to, among other things, who is the senior and who is the junior user of the mark IHAVEISSUES and confusingly similar variations." Am. Compl. ¶ 64. To the extent that the court finds unlawful infringement in this case, the harm will have occurred in North Carolina.

Moreover, the *Fidrych* court found that the level of interactivity of Marriott's website "is not enough, on its own, to make the website a sufficient basis to support the exercise of specific jurisdiction." 952 F.3d at 142. The court described the website as "permit[ting] customers to input their travel dates to view available hotels and to book rooms online, which requires them to provide personal and financial information. The website is not used to create a continuing, back-and-forth relationship between Marriott and the website user; it is used to facilitate the making of a one-off hotel reservation." *Id.* Of note, *Fidrych* did not describe any actual sales transactions that occurred on Marriott's website; rather, in the hotel industry, such purchases typically occur at the end of the customer's hotel stay. Disney Shopping's website, on the other hand, permits completed sales for

13

the marketed products, and such products are shipped directly to the customer's location. Moreover, the purchases are not necessarily "one-off" as described in *Fidrych*; Plaintiff's evidence demonstrates that Disney Shopping encourages continued communications and sales with each customer through a chat function, a solicitation to receive updates, special offers, and other information from the company, and post-purchase emails. *See* DE 37-12, 37-13.

This case also differs from other cases on which Defendants rely. For instance, in *Carefirst, supra*, the Fourth Circuit found that the website of a non-profit company, which provided information about its services and permitted anyone accessing the website to make a donation, insufficient to furnish a forum state contact adequate to support personal jurisdiction, particularly as "the only concrete evidence of online exchanges between [defendant] and Maryland residents was the single donation initiated by [plaintiff's] counsel."[2] *See* 334 F.3d at 401. Similarly, in *Megan Lee Studio, LLC v. TieGuys.com, Inc.*, the court found that the defendant's website, while alleged to have been used to sell products that infringed the plaintiff's copyright, and insufficient basis for purposeful direction in that "the Defendants ha[d] not sold any of the allegedly infringing ties to a North Carolina customer." No. 1:22-CV-00139-MR-WCM, 2023 WL 5618254, at *2 (W.D.N.C. Aug. 30, 2023); *see also id.* at *6 ("none of the relatively small number of transactions between [defendant] and North Carolina residents gave rise to the present suit"). Finally, in *Epic Games, Inc. v. Shenzhen Tairuo Technology Co., Ltd.*, the court determined that use of a Chinese corporation's website, which "provid[ed] downloads of defendant's [virtual reality] software developer kit and [permitted] pre-order sales of hardware-based development kits" was insufficient to serve as a contact with North Carolina residents; notably, at the time of

---

[2] The court recognizes that some of the purchases listed by Defendants were made by Plaintiff and/or its counsel; however,

14

the order, the "defendant had not officially launched" sales of the alleged infringing product in the United States, the opinion notes no actual sales of the product in North Carolina, and the court concluded that, "though defendant's website is interactive, plaintiff does not provide evidence that defendant uses it to target North Carolina residents specifically." 593 F. Supp. 3d 233, 244 (E.D.N.C. 2022). Unlike this case, Defendants' cited cases do not involve Lanham Act claims alleging the completed sales of infringing products via the defendant's website.

Rather, the facts of this case align with the opinions in *BohoBlu*, *supra*, and *Thousand Oaks Barrel Co., LLC v. Deep South Barrels LLC*, 241 F. Supp. 3d 708 (E.D. Va. 2017). In *Thousand Oaks*, the plaintiff alleged that the defendant competitor copied its designs and trademarks and sold infringing products throughout the United States, including the forum state, Virginia, via the defendant's website. *Id.* at 712. The court determined first that the defendant's "sole contacts with Virginia [were] its sales to Virginia customers via [defendant's] website." *Id.* at 715. The court found that, on the *Zippo* scale, the website was "plainly interactive," and that the defendant "purposefully directed its commercial activities into Virginia by constructing an interactive e-commerce website accessible to Virginia residents." *Id.* at 717; *see also id.* (describing defendant's "purposeful course of conduct" as "setting up an interactive e-commerce website accessible to Virginia residents, accepting payment from Virginia residents for e-commerce purchases, and shipping multiple products to Virginia residents"). The court also rejected the defendant's argument that it did not specifically target Virginia through advertisements, saying "The lack of ads targeted at Virginia also does not change the fact that [defendant] used its website to reach into Virginia to do business there." *Id.* The defendant also argued that its small percentage of sales to Virginia was insufficient to support a finding of purposeful direction, but the court cited a number of cases "persuasively concluding that personal jurisdiction exists on the basis of facts similar to

this case, namely where the defendant has a national interactive e-commerce website that generates a small amount of e-commerce sales in the forum state." *See id.* at 716 n.6 (collecting cases).

Similarly, in *BohoBlu*, the plaintiff alleged violations of the Lanham Act and that its basis for specific personal jurisdiction was (in part) that the defendants "sold and shipped items [e.g., jewelry] with the infringing mark to customers in North Carolina via website activity." 2024 WL 1364755, at *5. The court concluded that, even if the plaintiff's other jurisdictional basis were insufficient, the alleged "level of interactivity supports the Court's finding that Defendants' electronic activity and repeated sales and shipment of orders to both companies and consumers in North Carolina was purposefully directed with the manifested intent of engaging in business or other interactions within the State." *Id.* at *8. The defendants argued that the total number of sales to North Carolina—69 shipments for a total of $41,546.00, accounting for between .03% and 1.18% of annual sales during the relevant period—were insufficient to establish specific jurisdiction. *Id.* at *7. However, *BohoBlu* noted the Fourth Circuit's admonition that courts "should not 'merely . . . count the contacts and qualitatively compare th[e] case to other preceding cases" because "even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact . . . ." *Id.* (quoting *Carefirst*, 334 F.3d at 397). Rather, "courts should consider 'the quality and nature of the defendant's connection, not merely the number of contacts between the defendant and the forum state.'" *Id.* at *8 (quoting *dmarcian, Inc.*, 60 F.4th at 134); *see also UMG Recordings, Inc.*, 963 F.3d at 352). The court found that defendants' sales to North Carolina residents via a website that provided U.S. shipping rates and an option to pay prices, "which 'have duties and taxes already built in,'" with U.S. dollars were "neither passive nor random." *Id.*

The court finds these, and other similar cases, persuasive in evaluating the present motion. *See id.* (collecting cases); *see also Thousand Oaks*, 241 F. Supp. 3d at 716 n.6 (collecting cases). Defendants argue primarily that "[t]he *de minimis* direct … sales that occurred in North Carolina do not subject Disney Shopping … to specific jurisdiction." Memo. at 17; *see also id.* at 22-23; Reply at 6-7. Defendants assert that

> [f]rom August 23, 2019 through August 27, 2023, Disney Shopping sold 2,669 pieces of merchandise featuring Marvel characters with the phrase, "I Have Issues." (Childs Decl. ¶ 13.) That merchandise generated $53,977 in revenue. (*Id.*) Of those sales, only 60 items were sold in North Carolina for approximately $1,200 in revenue. (*Id.* ¶ 14.) Thus, over a more than four-year period, a total of 2.25% of the Disputed Goods, representing 2.22% of Disney Shopping's revenue for the Disputed Goods, were sold into North Carolina . . . .

Memo. at 23. However, courts in this circuit have recognized that single-digit percentages are not necessarily dispositive in determining sufficient contacts for a purposeful direction analysis. *See BohoBlu*, 2024 WL 1364755, at *7 (citing *Ctr. for Cmty. Self- Help v. Self-Financial, Inc.*, No. 1:21cv862, 2023 WL 1779831, at *6 (M.D.N.C. Feb. 6, 2023) ("If Defendant's business were equally distributed across all 50 states, it would have only 2% of its business in every state."). Rather, looking at the "quality and nature of the defendant's connection" (*dmarcian, Inc.*, 60 F.4th at 134), the court finds Disney Shopping's use of its "interactive" website to conduct business with North Carolina residents sufficient to create the necessary contacts with the forum state. Disney Shopping purposefully directed its activities at North Carolina where it created an e-commerce website, held itself out to do business in North Carolina, and shipped infringing products to North Carolina's residents.

Finally, the court must determine whether the exercise of specific personal jurisdiction over Disney Shopping is consistent with the "traditional notions of fair play and substantial justice." *Int'l Shoe Co v. Washington*, 326 U.S. 310, 316 (1945). First, Defendants mention nothing about

17

any burden litigating in North Carolina may have on Disney Shopping, and the court notes that Defendants have secured competent local counsel to represent their interests. To the extent that litigating in this state may be inconvenient for Disney Shopping, such inconvenience does not appear to be "so grave as to offend constitutional due process principles." *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001).

Furthermore, North Carolina "maintains a 'substantial interest' in 'deterring trademark infringement' that is implicated by the sale of products with infringing marks in its state where the harm is felt by [a] North Carolina business." *BohoBlu*, 2024 WL 1364755, at *10 (quoting *Christian Sci. Bd. of Dirs.*, 259 F.3d at 217-18); *see also dmarcian, Inc.*, 60 F.4th at 135 ("North Carolina has a strong interest in protecting its companies' rights from foreign infringements, and North Carolina companies like [Plaintiff] maintain a strong interest in relying on their home forum for vindication of their legitimate rights."). Moreover, the Plaintiff, a self-described "small family business . . . founded in and currently headquartered in Fayetteville, North Carolina" (Am. Comp. ¶ 9), alleges that it has "used the mark IHAVEISSUES as the Plaintiff's Company's brand and as a trademark in connection with its apparel retail since at least December 27, 2001" (*id.* ¶ 12) and has "invested and is currently investing significant time, effort, and money in advertising, marketing, and promoting the Registered Word Mark and the goods provided in connection with that mark to promote business" (*id.* ¶ 18). The court finds Plaintiff has a substantial interest in obtaining convenient and effective relief in its home state of North Carolina. Accordingly, exercising personal jurisdiction over Disney Shopping is constitutionally reasonable.

The court concludes that Plaintiff has met its burden of demonstrating a prima facie case of the court's specific personal jurisdiction over Defendant Disney Shopping and, therefore, Defendants' motion to dismiss is denied in this regard.

18

B.    Remaining Defendants

Defendants contend that Defendant Disney is "a holding company and the indirect corporate parent of Disney-affiliated entities," which "is not involved in the direct sale of merchandise or in licensing intellectual property." Memo. at 2. They also assert that Defendant Marvel is "the indirect corporate parent of Marvel Brands and likewise is not involved in the licensing of any Marvel trademarks or related art." *Id.* Finally, Defendants claim that Defendant Marvel Brands "granted non-exclusive licenses for non-parties to sell goods bearing certain Marvel characters and intellectual property nationwide (and internationally in some instances) but did not control where its licensees directed their sales efforts." *Id.* at 3.

Plaintiff alleges generally that "Defendants have engaged in substantial activity within this state" (Am. Compl. ¶ 7) and argues broadly that "Defendants have established contacts with North Carolina . . . by operating an interactive website that among many options, allows consumers to hand select North Carolina as a limited destination to purchase and receive apparel featuring the Infringing Mark in North Carolina" (Resp. at 28). In addition, with respect to the remaining Defendants, the Plaintiff argues in full:

> Defendants The Walt Disney Company, Marvel Entertainment and Marvel Brands have utilized their position as a recognizable global brand to establish advertising, marketing, and production mechanisms, including the Shop Disney site to solicit, engage, and facilitate the sale, shipment, and delivery of customized apparel featuring the Infringing Mark. By soliciting, advertising and promoting their brand name in email messages sent to consumers from a limited geographic region for customized apparel, including North Carolina consumers, in order confirmation and shipment and delivery confirmation emails, which include North Carolina addresses, selected by the consumer on the shop [D]isney site, the Defendants are not simply passive subsidiaries tied to a passive website as the Defendants indicate in their motion. Defendants acknowledge in their motion that Marvel Brands retained the right to approve the licensed products and to review its licensees records as well.(Plotkin Decl. 13) Each Defendant named in the suit have used their brand name, authority, and/or advertising and marketing resources to purposefully engage in specifically targeted business related contacts that easily facilitated the browsing, selection, purchase, shipment and delivery of apparel to limited

19

> geographic locations featuring the Infringing Mark to North Carolina consumers in
> a manner that was purposeful, intentional, and that the Defendants should have
> anticipated would reach North Carolina consumers enough as to not disrupt
> concepts of due process. As a result of the Defendants facilitating and producing
> apparel featuring the Infringing Mark to be delivered to North Carolina, the Plaintiff
> has and continues to be harmed by the Defendants saturating the market in
> locations, including North Carolina, with apparel featuring the Infringing Mark
> causing confusion to consumers, including North Carolina consumers, which is
> directly related to the causes of action in the Complaint.

Resp. at 31-32. Plaintiff proffers no legal nor evidentiary support for its otherwise conclusory statements. Nothing in the record demonstrates that any of the remaining Defendants participated or were involved in the creation and/or use of Disney Shopping's website. No evidence exists showing that the remaining Defendants have any contacts with North Carolina, whether general or specific. The court finds Plaintiff's vague assertions, without more, insufficient to demonstrate this court's personal jurisdiction over Defendants Disney, Marvel, and Marvel Brands LLC. *See Vision Motor Cars*, 981 F. Supp. 2d at 468 ("Blanket conclusory allegations as to multiple defendants are insufficient."). Plaintiff has not met its burden and, thus, Defendants motion to dismiss Plaintiff's claims against the remaining defendants is denied without prejudice.

## IV.   Conclusion

In sum, Plaintiff has failed to prove by a preponderance of the evidence that Defendants Disney, Marvel, and Marvel Brands purposefully directed their activities at North Carolina, as necessary for this court to exercise specific personal jurisdiction over them. However, Plaintiff has shown that its claims arise from activities Disney Shopping directed at North Carolina residents, and the court finds its exercise of personal jurisdiction over Disney Shopping to be constitutionally reasonable. Accordingly, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [DE 28] is GRANTED IN PART AND DENIED IN PART. Plaintiff's claims against Defendants Disney, Marvel, and Marvel Brands are dismissed without prejudice. This action will

proceed on Plaintiff's claims against Defendant Disney Shopping. The matter is referred to the Honorable Robert T. Numbers, II to lift the stay and proceed with scheduling and managing any necessary discovery.

SO ORDERED this _____ day of August, 2024.

_____
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE